# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION** | Civil Action No.: 23-02174(WJM)(JSA) |
| **IN RE FRAGRANCE INDIRECT PURCHASER ANTITRUST LITIGATION** | Civil Action No. 23-03249(WJM)(JSA) |
| **IN RE FRAGRANCE END-USER PLAINTIFF ANTITRUST LITIGATION** | Civil Action No. 23-16127(WJM)(JSA) |

## STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS

Unless otherwise agreed in a writing signed by the Parties' counsel of record in the above-captioned actions (the "Actions"), this Stipulation and Order Regarding Electronically Stored Information and Hard-Copy Documents ("ESI Stipulation") shall govern the Parties' discovery related to electronically stored information ("ESI"), as that term is used in Rule 34(a) of the Federal Rules of Civil Procedure, as well as the form of production of Hard-Copy Documents as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules of this Court. The discovery activities covered by this ESI Stipulation are to be conducted as follows:

## I.    GENERAL PROVISIONS

1.    This ESI Stipulation supplements all other discovery rules and orders.

2.    Except as specifically set forth herein, this ESI Stipulation does not alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of

this U.S. District Court ("Local Rules"), as applicable.

3.      This ESI Stipulation may be modified for good cause. The Parties may agree to modifications, and if so agreed to, shall jointly submit any modifications to the Court. If the Parties cannot reach an agreement regarding proposed modifications, the Parties shall submit their competing proposals and a summary of their dispute to the Court.

4.      The Parties reserve their rights under the Federal Rules of Civil Procedure, including Rule 26, in connection with this ESI Stipulation and the Parties' respective productions made pursuant thereto.

5.      The Parties acknowledge their duty to meet and confer in good faith to try to resolve discovery disputes.

6.      By stipulating to this ESI Stipulation and agreeing to produce Documents, generally, in a particular form or forms, neither the Producing Party nor the Receiving Party waives any objection to producing any particular Document or category of Documents on any grounds whatsoever.

7.      Nothing in this ESI Stipulation prevents any Party from reviewing Documents or information for responsiveness, privilege and confidentiality prior to production.

8.      To the extent that a technical term is not defined herein, those technical terms shall be defined by "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

## II.    **DEFINITIONS**

1.      "Document(s)" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a)(1)(A).

2.      "Electronically stored information" or "ESI" shall have the same meaning and

scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

3.      "Hard-Copy Document(s)" means Documents existing in paper form at the time of collection.

4.      "Hash Value" is a mathematical algorithm that calculates a unique value for a given set of data, similar to a digital footprint, representing the binary content of the data to assist in subsequently ensuring that data has not been modified and to facilitate duplicate identification. Unless otherwise specified, Hash Values shall be calculated using the MD5 hash algorithm.

5.      "Load File(s)" are electronic files containing information identifying a set of paper scanned (static) images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. Load Files also contain data relevant to individual Documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text. A Load File linking corresponding images is used for productions of static images (*e.g.*, TIFFs).

6.      "Metadata" is the term used to describe the application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

7.      "Native Format" means and refers to an electronic Document's associated file structure defined by the original creating application and as collected from custodians.  For example, the Native Format of an Excel workbook is an .xls or .xlsx file.

8.      "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing visible text within an image.

9.      "Outside Counsel" are attorneys who are not employees of a Party but are retained

to represent or advise a Party and have appeared in the Actions on behalf of that Party or are associated with a law firm that has appeared on behalf of that Party.

10.    "Party" (plural, "Parties") means any Party to the Actions including all of a Party's officers, directors, employees, consultants, retained experts, and Outside Counsel, and their support staff.

11.    "Producing Party" means any Party or non-Party who produces ESI and/or Hard-Copy Documents in the Actions.

12.    "Receiving Party" means a Party in the Actions to whom ESI and/or Hard-Copy Documents are produced.

## III.    PRODUCTION OF HARD-COPY DOCUMENTS

1.    **PRODUCTION FORMAT.** The format of productions of Hard Copy Documents shall comply with the following requirements.    The Parties reserve the right to request an alternative format or method of production to be used.    In that event, the Parties will meet and confer to discuss alternative production requirements, formats, and/or methods

a.    **IMAGE FORMAT.** Documents that exist in hard-copy format only shall be scanned and produced as black and white Group IV TIFFs or PDFs, created with a resolution of at least 300 dots per inch (DPI). If an original Document contains color necessary to understand the meaning of content of the Document, the Document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. This includes, but is not limited to, color on graphs, charts, presentations, edits, or highlighting made by hand or electronically on the original. Each TIFF or JPG image shall be branded with sequential production numbers and

appropriate confidentiality designations, if applicable. Each TIFF or JPG image filename shall correspond to the Bates number associated with that page. TIFF or JPG files shall show all text and images that would be visible to a user of the Hard-Copy Documents.

b.    **DATABASE LOAD FILES/CROSS-REFERENCE FILES.** The images will be accompanied by an image Load File that can be loaded into commercially acceptable production software.

c.    **OCR TEXT FILES.** A commercially acceptable technology for OCR shall be used for all scanned Hard-Copy Documents. OCR text shall be provided as a single multi-page text file for each Document, and the filename itself should match its respective TIFF filename. If a Document is redacted, the text files shall not contain the redacted portions of the Documents, but should contain the remaining unredacted text. The Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. The Parties acknowledge, however, that due to poor quality of the originals, not all Documents lend themselves to the generation of accurate OCR. OCR text files should indicate page breaks where possible.

d.    **METADATA.** The following information shall be produced in the delimited data file accompanying Hard-Copy Documents: (i) BEGBATES; (ii) BEGATTACH; (iii) ENDBATES; (iv) ENDATTACH; (v) CUSTODIAN; (vi) PAGES (vii) VOLUME; and (viii) CONFIDENTIALITY.

e.    **UNITIZING OF DOCUMENTS.** In scanning Hard-Copy Documents,

distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (*i.e.*, Hard-Copy Documents should be logically unitized). The Parties will use reasonable efforts to unitize Hard-Copy Documents correctly to avoid producing large numbers of Documents in single "clumps."

## IV.    IDENTIFICATION AND COLLECTION OF RELEVANT ESI

1.      Custodians and Sources.  The Parties agree to meet and confer regarding the identification, preservation, and collection of both custodial and non-custodial sources of relevant ESI (*e.g.*, email, instant messaging, shared drives, network storage, local hard drives, mobile phone applications, etc.), including: (a) the identity, title and role (to the extent practicable) of custodians possessing relevant information and from whom ESI will be collected or produced; (b) the location(s) and description(s) of relevant data sources, including custodian, non-custodian, and third-party Documents (to the extent known to the Producing Party); (c) the identity and scope of sources of Documents and ESI to be produced without the use of a search methodology; (d) applicable timeframe for collection and review of ESI; and (e) prioritization of categories of ESI to be collected, reviewed, and produced.  To the extent the Receiving Party believes additional sources should be searched, the Parties will meet and confer on that topic.

The following categories of ESI are not required to be produced.  Nothing in this paragraph shall prevent any Party from moving for relief should a need for any of the following categories of Documents arise:

     i.      Deleted, slack, fragmented, or other data only accessible by forensics.

     ii.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

iii.   Online access data such as temporary internet files, history, cache, cookies, and the like.

iv.   Data in Metadata fields that are frequently updated automatically, such as last-opened dates.

v.   Back-up data that are substantially duplicative of data that are more accessible elsewhere.

vi.   Data remaining from systems no longer in  use that are unintelligible on the systems in use, provided that the Producing Party shows that retrieving Documents from such system  pose an undue burden on the Producing Party.

vii.   Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a  server, laptop, desktop computer, or "cloud" storage).

2.      Known Responsive ESI Must Be Produced.  ESI known by the Producing Party to be responsive to a discovery request shall be produced without regard to whether it was responsive to any search methodology described herein or developed in accordance with this ESI Stipulation, unless Counsel specifically identifies the ESI being withheld and has a specific objection for withholding each withheld ESI.

3.      Discrete Collections / Custodian-Identified Files.  Those portions of the Parties' ESI representing discrete folders or collections of information that are reasonably known to contain Documents likely to be responsive to a discovery request, such as relevant folders of ESI that are identified or segregated by the Producing Party, shall be identified and collected, and produced on a rolling basis.  Notwithstanding a Party's awareness that a discrete collection is likely to contain responsive information, a Producing Party may, in good faith, withhold from production any Documents from any such discrete collection based on responsiveness, confidentiality, privilege, or other protection(s) from disclosure or production.  In addition, should the Producing Party

believe that a discrete folder or collection of information is too voluminous to make review of each Document proportional to the needs of the case, the Parties shall meet and confer to discuss a resolution. A Receiving Party may also request that the Parties meet and confer if it identifies any deficiency in the productions. Should the Parties be unable to reach a solution after a meet and confer, the Parties may seek a further order from the Court.

4.      Key Word Searching. If the Producing Party is identifying or culling potentially responsive materials, which are not already known to be responsive, using search terms, the Parties will meet and confer about search terms in English and any other languages used in the Producing Party's ESI. Before implementing search terms, the Producing Party will disclose a list of search terms in English and any other languages in the exact forms that they will be applied (*i.e.*, as adapted to the operators and syntax of the search platform), any date filters, or other culling methods, after which the Receiving Party may propose additional terms or culling parameters. During the meet-and-confer process, the Producing Party will explain, as applicable, any relevant company terminology, relevant project and code names, acronyms, abbreviations, and nicknames, if any, included in the list of search terms. The Parties shall participate in a reasonably iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and proportional methods to identify responsive Documents, including the provision of hit reports and opportunities for the Parties to propose additional search terms and validation procedures.

5.      Hit Reports. Notwithstanding the foregoing, in the event that a Producing Party claims undue burden or expense with respect t to modified and additional search terms proposed by the Receiving Party, the Producing Party will provide hit reports for the modified and additional search terms proposed, including the following with respect to each modified or additional search term:

a.  The number of Documents with hits for that term;

b.  The number of unique Documents, *i.e.*, Documents that do not have hits for any other term, for that term; and

c.  The number of family members, including the Documents with hits, of the Documents with hits for that term.

The Producing Party will make reasonable efforts to provide hit reports, to the extent practicable, that include the total number of Documents in the de-duplicated collection against which the search terms were applied, the total number of unique Documents containing hits, and the total number of Documents containing hits and their Document family members. If the Producing Party is unable to provide hit reports in the form specified above, the Parties will meet and confer to discuss an alternative format. The Parties also will meet and confer to resolve disagreements over the search terms or their application.

6.  Validation of Search Methodology and Results. Each Producing Party will make reasonable efforts to ensure its search methodology is effective and that responsive ESI is not inadvertently omitted by employing validation and quality control measures. The Parties will meet and confer regarding validation procedures and random sampling of the Parties' ESI (both of sets that were not responsive to search terms and of the entire collection against which search terms were run or TAR or other identification or classification methodology was used). To the extent that the Parties are unable to reach agreement on validation, the Parties shall submit such issues for resolution by the Court or its designee.

7.  Use of TAR or Other Search Technologies. If the Producing Party decides to use TAR, including "CAL" or "predictive coding," to identify or cull ESI to be reviewed or produced, the Producing Party will notify the Receiving Party in advance to discuss an appropriate protocol

for that type of review.

8.     Reassessment.  After the completion of the search methodology meet-and-confer sessions, a Producing Party may encounter the need to reassess a search methodology and/or a validation process and, in such case, the Producing Party will notify the Receiving Party, and the Parties will meet and confer to address any issues in a reasonable and timely manner.

9.     Good faith.  The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by the Producing Party.

10.     Continuing Obligations.  The Parties recognize that discovery shall be an iterative and cooperative process.  The Parties will continue to meet and confer regarding any issues as necessary and appropriate.  This ESI Stipulation does not address or resolve any objections to the scope of the Parties' respective discovery requests.

11.     Reservation of Rights.  The Parties retain the right, upon reviewing any productions made by another Party in the Actions or conducting other investigation and discovery, to reasonably request that ESI from additional non-custodial data sources and custodians be produced or that additional methods of identifying Documents or ESI be applied to the original or current non-custodial data sources and custodians.  The Parties will meet and confer regarding such request(s) prior to any search or production related thereto.

## V.    <u>PRODUCTION OF ELECTRONICALLY STORED INFORMATION</u>

1.     **PRODUCTION TIMING.** The Parties agree that rolling productions are appropriate.

2.     **CULLING/FILTERING.**

        a.     **File Type.** Each Party will use best efforts to filter out common system files

and application executable files by using commercially reasonably hash-identification process. Hash Values that may be filtered out during this process are located in the National Software Reference Library ("NRSL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT; LOGS; DRVS; C++ Program file (c); C++ Builder 6 (cpp); Channel Definition Format (cdf); Creatures Object Sources (cos); Dictionary file (die); Executable (exe); Hypertext Cascading Style Sheet (css); JavaScript Source Code (js); Label Pro Data File (IPD); Office Data File (NICK); Office Profile Settings (ops); Outlook Rules Wizard File (rzw); Scrap Object; System File (dll); Temporary File (tmp); Windows Error Dump (dmp); Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt); Python Script files (.py, .pyc, .pud, .pyw), and Program Installers; provided that, such files shall not be discarded if they were attached to an email that is relevant.

3. **DE-DUPLICATION.** Each Producing Party shall de-duplicate ESI based on MD5 or SHAl Hash Values at a family level. Attachments should not be eliminated as duplicates for purposes of production unless the parent email and all attachments are also duplicates. The Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. The Parties may not remove near-duplicate Documents or use email thread suppression, although the Parties may use email threading for their own internal review and other internal processes. The CUSTODIAN field will list each custodian to the extent

electronically maintained, including custodians of de-duped files.

4.      De-duplication will be done across the entire collection (global de-duplication) and to the extent electronically maintained, the CUSTODIAN field will include each custodian, separated by a comma or semicolon, who was a source of that Document and the FILE PATH field will include each file path, separated by a comma or semicolon, where the Document was stored. This information will be produced as Metadata consistent with Par. 7(f). Should the CUSTODIAN or FILE PATH Metadata fields produced become outdated, an overlay file providing all the custodians and file paths for the affected Documents will be produced prior to substantial completion of production. To the extent producing each file path where a Document was stored becomes unduly burdensome for a Producing Party, they will notify the Receiving Party of the same. The Parties will meet and confer to come to a resolution.

5.      **STRUCTURED DATA.** To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

6.      **PRIOR PROCESSING.** Notwithstanding anything in this ESI Stipulation to the contrary, the specifications in this ESI Stipulation shall apply only to Documents that are produced in the first instance in the Actions. To the extent that any Producing Party is required or agrees to produce Documents that it collected or produced previously in connection with other litigation or government investigations, such Documents may be produced in the same format in which they were originally collected or produced, and nothing herein shall require the Producing Party to re-process or re-collect Documents (including re-population of Metadata fields) that have been

processed or collected in connection with other litigation or investigations.

7.      **PRODUCTION FORMAT FOR ESI.** The format of productions of ESI shall comply with the below-listed requirements:

a.      **Image Format.** Documents shall be produced as single-page black and white Group IV TIFFs, created with a resolution of at least 300 DPI with the exception of spreadsheet-type files, presentation-type files, audio files, and video files, which shall be produced in Native Format. If an original Document contains color that is reasonably necessary to understand the Document, then the Document shall be produced as a single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. However, the Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations. Each TIFF or JPG image filename shall correspond to the Bates number associated with that page. Wherever possible, TIFF or JPG files shall show all text and images that would be visible to a user of the ESI Documents. For example, TIFFs of email messages should include the BCC line. If the image does not accurately reflect the Document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options. If a Document is produced in Native Format, a single-page Bates-stamped image slip sheet stating that the Document has been produced in Native Format should be provided. If a PowerPoint Document is produced

in redacted form (consistent with Section VI.2), it need not be produced in Native Format but should be produced as single-page, 300 DPI TIFF/JPG images that display both the slide and any relevant and non-privileged speaker's notes. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the Load File using the NATIVELINK field. To the extent that any Party believes that specific Documents or classes of Documents not already identified within this ESI Stipulation should be produced in Native Format, the Parties agree to meet and confer in good faith. The Parties also agree not to degrade the searchability of Documents as part of the Document production process.

b.     **Database Load Files/Cross-Reference Files.** The images will be accompanied by an Opticon (OPT) image Load File that can be loaded into commercially acceptable production software.

c.     **Text Files.** A single text file shall be provided for each Document, and the filename itself should match the beginning Bates number of the respective Document. When possible, the text of native files should be extracted directly from the native file. For electronic files without extractable text (*e.g.*, scanned Hard-Copy Documents) or Documents produced with redactions, the Producing Party shall use OCR to generate text for the Document. OCR-generated text shall be provided for Documents without extractable text in the original native file unless the Document is handwritten notes, drawings, or is otherwise not easily convertible into a

search format.

d.     **Native Files.** Any file produced in Native Format should be produced with extracted text and applicable Metadata fields set forth in Exhibit A hereto. Any file produced in Native Format should be named to match the beginning Bates number of its corresponding entry in the database Load File. Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the Document was produced in Native Format.

   i.     **Spreadsheets.** Native copies of all spreadsheets should be produced with extracted full text and applicable Metadata fields set forth in Exhibit A hereto.  Spreadsheets should be redacted natively.

   ii.    **Presentations (*i.e.*, PowerPoints).**  Presentation and PowerPoint Documents should be produced in Native Format with TIFF placeholders (unless they have been redacted, *see* Section V.7.a), and should be produced with extracted full text and applicable Metadata fields set forth in Exhibit A hereto.

   iii.   **Video and Audio Files.** Audio and video files will be produced in Native Format, with TIFF placeholders and available Metadata provided in database Load Files.

   iv.    **Other Native Files.** All available Metadata should accompany any native file that is produced. If a Document of any type is produced with a placeholder image with no accompanying native file (commonly referred to as an "exception"), the placeholder should

include the Bates number and the confidentiality designation. Any native file produced should be accompanied by an entry in the database Load File as well as a Bates-stamped and confidentiality-stamped placeholder image.

v. **Requests for Additional Native Files.** If good cause exists to request production of specified files, other than those specifically set forth above, in Native Format, the Receiving Party may request such production and provide an explanation of the need for native file review, after which the Parties shall meet and confer. The Producing Party may decide that good cause exists to produce additional file types among its own collection in Native Format and may do so after notifying the Receiving Party. Any native files that are produced should be produced with a link in the NATIVELINK field, along with all extracted text and applicable Metadata fields, as well as a Bates-stamped and confidentiality TIFF placeholder. Any dispute regarding the production of Documents in Native Format shall be resolved under applicable law or as otherwise agreed by the Parties.

e. **System Files.** Common system and program files need not be processed, reviewed or produced.

f. **Metadata Fields and Processing.** The Producing Party shall undertake reasonable efforts to produce ESI with the Metadata and coding fields set forth in Exhibit A, where available for the particular ESI. The Parties are

not obligated to populate manually any of the fields identified in Exhibit A if such fields cannot be extracted from the Document or cannot be automated by processing software, with the exception of confidentiality and privilege.

g.    **Format.** The production data may be exchanged between counsel in encrypted form (*e.g.*, TrueCrypt, password-protected Zip, or RAR files). Productions of 20GB or less may be made via FTP or secure server; larger productions should be made on hard media (*e.g.*, hard drives).

h.    **Attachments.** Attachments will be produced sequentially after the parent email.  For the avoidance of doubt, attachments do not include hyperlinked Documents.

## VI.    WITHHELD DOCUMENTS AND INFORMATION

1.    The Parties agree that if any part of an email or its attachments is responsive and non-privileged, the entire email and attachments will be produced unless the Document itself is partially privileged and would require privilege redactions, fully privileged and would require a slipsheet indicating that the Document is privileged, or otherwise has privacy or confidentiality concerns.   Parent-child relationship (the association between an attachment and its parent Document or between embedded Documents or linked internal or non-public Documents and their parents) shall be preserved.

2.    Any Producing Party may withhold or redact production material or Documents within an otherwise-responsive Document or family of Documents if the information falls within one of the following categories: (i) privileged material; (ii) personally identifiable information as set forth in Fed. R. Civ. P. 5.2; (iii) protected health information; (iv) highly sensitive personal

information , such as information concerning a person's health, finances, or religious beliefs, that is objectively irrelevant to the Actions; or (v) trade secrets, pricing, profits, and non-public financial information unrelated to fragrance products.  The Parties agree to meet and confer before making any additional redactions if a Party believes there is a good faith basis to permit limited redaction by agreement of the Parties of highly sensitive, non-relevant information that cannot be adequately protected by a Confidentiality designation.  If the Parties do not reach agreement, the Party wishing to apply additional redactions will move the Court or its designee for permission to so redact prior to applying redactions.  For the avoidance of doubt, no Party is permitted to apply redactions other than those provided in Section VI.2(i)–2(v) above absent agreement with the Receiving Party or Court order.

3.    For Documents withheld from production under the foregoing paragraph, the Producing Party must Bates number the responsive families and provide either a list of the removed Bates-numbered Documents, a slip sheet for the removed Document, or a notation for removed portions of a Document indicating in substance as privileged" and indicate in the Metadata Load File the category of information withheld.  The Producing Party shall mark each redaction with a legend stating "REDACTED" (or using similar, easily identifiable language), and specify the basis for the redaction as appropriate, or a comparable notice. Where a Document consists of more than one page, at least each page on which information has been redacted shall be so marked.

4.    For Document families where the only responsive Document in the family is entirely privileged, the family need not be produced or given a Bates number. In scenarios such as this, the responsive and privileged Documents will need to be included in the Party's privilege log.

## VII.    ESI LIAISONS

To promote cooperation among the Parties, the Parties will designate ESI liaisons for

purposes of meeting and conferring on ESI topics.  All productions of ESI by any Party or non-party shall be sent to the Parties' respective ESI liaisons and lead counsel.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD

Dated: May 9, 2025

**CARELLA, BRYNE, CECCHI, BRODY & AGNELLO, P.C.**

*/s/ James E. Cecchi*
James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Interim Liaison Counsel for Direct Purchaser Plaintiffs*

Hilary Scherrer
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
hscherrer@hausfeld.com

Christopher M. Burke
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
Tel.: (619) 369-8244
cburke@burke.law

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of the Americas
31st Floor
New York, NY 10036
Tel.: (917) 438-9189
lnussbaum@nussbaumpc.com

*Interim Co-Lead Class Counsel for the Direct Purchaser Plaintiffs*

Dated: May 9, 2025

**LITE DEPALMA GREENBERG
& AFANADOR, LLC**

*/s/ Joseph J. DePalma*
Joseph J. DePalma
Catherine B. Derenze
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
cderenze@litedepalma.com

Mindee J. Reuben
Steven J. Greenfogel
**LITE DEPALMA GREENBERG
& AFANADOR, LLC**
1515 Market Street - Suite 1200
Philadelphia, PA 19102
Tel: (267) 519-8306
Fax: (973) 623-0858
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

*Interim Liaison Counsel for Producer Indirect
Purchaser Plaintiffs*

Michael J. Flannery
**CUNEO, GILBERT & LADUCA, LLP**
Two City Place Drive
St. Louis, MO  63141
Tel: (314) 226-1015
mflannery@cuneolaw.com

Evelyn Riley
Daniel Cohen
Lissa Morgans
Cody McCracken
**CUNEO, GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NWSuite 200
Washington, DC 20016
Tel.: (202) 789-3960
evelyn@cuneolaw.com
danielc@cuneolaw.com
lmorgans@cuneolaw.com
cmccracken@cuneolaw.com

Michelle J. Looby
Daniel E. Gustafson
Daniel C. Hedlund
Frances Mahoney Mosedale
Bailey Twyman-Metzger
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com
btwymanmetzger@gustafsongluek.com

Dennis J. Stewart
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 595-3299
Fax: (612) 339-6622
dstewart@gustafsongluek.com

*Interim Co-Lead Class Counsel for Producer
Indirect Purchaser Plaintiffs*

Jon A. Tostrud
Anthony M. Carter
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel.: (310) 278-2600
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

Timothy D. Battin
Christopher V. Le
**BOIESBATTIN LLP**
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel.: (703) 764-8700
tbattin@boiesbattin.com
cle@boiesbattin.com

*Interim Producer Indirect Purchaser Plaintiffs'
Steering Committee*

Dated: May 9, 2025

**LAW OFFICES OF MICHAEL D. FITZGERALD**

*/s/ Michael D. Fitzgerald*
Michael D. Fitzgerald
1 Industrial Way West, Unit B
Eatontown, NJ 07724
P.O. Box 1067
Oakhurst, NJ 07755
Tel.: (202) 349-1482
mdfitz@briellelaw.com

*Interim Liaison Counsel for the End-User Plaintiffs*

Kellie Lerner
**SCHINDER CANTOR LERNER LLP**
14 Penn Plaza, Siote 1900
New York, NY 10122
Tel.: (646) 960-8601
Kellie@scl-llp.com

Kimberly A. Justice (*pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel.: (610) 234-6487
kjustice@fklmlaw.com

*Interim Co-Lead Class Counsel for End-User Plaintiffs*

Dated: May 9, 2025

*/s/ Tansy Woan*
Boris Bershteyn (*pro hac vice*)
Matthew Martino (*pro hac vice*)
Tansy Woan
Andrew Muscato
Evan Levicoff (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, New York 10001
(212) 735-3000
Boris.Bershteyn@skadden.com

Matthew.Martino@skadden.com
Tansy.Woan@skadden.com
Andrew.Muscato@skadden.com
Evan.Levicoff@skadden.com

*Attorneys for Defendant International Flavors
& Fragrances Inc.*

Dated: May 9, 2025

/s/ Liza M. Walsh

Liza M. Walsh
Jessica K. Formichella
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Telephone: (973) 757-1100
Facsimile: (973) 757-1090

Robert Milne (*pro hac vice*)
Martin M. Toto
William H. Bave III (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
mtoto@whitecase.com
rmilne@whitecase.com
william.bave@whitecase.com

*Attorneys for Defendants Symrise Inc., Symrise
US LLC, and Symrise AG*

Dated: May 9, 2025

/s/ Kevin R. Reich

Kevin R. Reich
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4755
kreich@gibbonslaw.com

Aidan Synnott (*pro hac vice*)
Eyitayo St. Matthew-Daniel (*pro hac vice*)
Hallie S. Goldblatt (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &**

23

**GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000
asynnott@paulweiss.com
tstmatthewdaniel@paulweiss.com
hgoldblatt@paulweiss.com

*Attorneys for Defendants Givaudan Fragrances Corporation, Ungerer & Company, and Custom Essence, LLC*

*Attorneys for Defendant Givaudan SA*

Dated: May 9, 2025

*/s/ Sean P. McConnell*
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19380
(215) 979-1947
spmcconnell@duanemorris.com
sckulik@duanemorris.com

D. Jarrett Arp (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
901 15th Street, NW
Washington, DC 20005
(202) 962-7000
jarrett.arp@davispolk.com

Arthur J. Burke (*pro hac vice*)
Anna M. Kozlowski (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
arthur.burke@davispolk.com
anna.kozlowski@davispolk.com

*Attorneys for Defendants Firmenich Incorporated, Agilex Flavors & Fragrances, Inc., DSM-Firmenich AG, and Firmenich International SA*

IT IS ORDERED that the foregoing Stipulation is approved.


Dated:  5/12/25


*/s/ Jessica S. Allen*
**HON. JESSICA S. ALLEN, U.S.M.J.**

**EXHIBIT A**

| Field | Definition | Doc Type |
|---|---|---|
| BEGDOC | Bates (number) of the first page of the Document. | All |
| ENDDOC | Bates number of the last page of the Document. | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent email) | Email |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment) | Email |
| SOURCE/ORGANIZATION | Name of Party producing the Document | All |
| CUSTODIAN | Name of person or other data source (non-human) from where Documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (*e.g.*, Smith, John A. and Smith, John B.) | All |
| ALL CUSTODIANS | All persons or data where the Document was found prior to deduplication. | |
| FILESIZE | File Size | All |
| APPLICAT | Commonly associated application for the specified file type. | All |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, file name, and file source extension. If an email extracted from a container, *e.g.*, from a .pst file, it should contain the name and location of the email container, and the folder within the container from which the email was collected | E-document, Email |
| ALL FILEPATHS | The locations where copies of the item were located at the time of collection | E-document, Email |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | Email |

| Field | Definition | Doc Type |
|---|---|---|
| FROM | Sender | Email |
| TO | Recipient | Email |
| CC | Additional Recipients | Email |
| BCC | Blind Additional Recipients | Email |
| SUBJECT | Subject line of email | Email |
| FAMILY DATE | If the Document was part of a family, *e.g.*, an email attachment, the date of the parent Document | Email, E-Document |
| ATTACHCOUNT | Number of attachments to an email | Email |
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons | Email |
| DATESENT (mm/dd/yyyy hh:mm:ss AM) | Date Sent | Email |
| Email Outlook Type | Type of Outlook item, *e.g.*, email, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | MD5 and/or SHAl Hash Value | All |
| TITLE | Title provided by user within the Document | E-document |
| AUTHOR | Creator of a Document | E-document |
| DATECRTD (mrn/dd/yyyy hh:mm:ss AM) | Creation Date | E-document |
| LAST MODIFIED BY | Last person who modified (saved) a Document | E-document |
| LASTMODD (mrn/dd/yyyy hh:mm:ss AM) | Last Modified Date | E-document |
| DocumentType | Descriptor for the type of Document: "E-document" for electronic Documents not attached to emails; "Email" for all emails; "E-attachment" for files that were attachments to emails; and "Physical" for Hard-Copy Documents that have been scanned and converted to an electronic image. | All |
| Importance, if available | High Importance - indicates Priority Email message. | Email |
| Page Count | Page count or image count | All |
| Redacted | Descriptor for Documents that have been redacted. "Yes" for redacted Documents; "No" for un-redacted Documents. | All |

| Field | Definition | Doc Type |
|---|---|---|
| ProdVol | Production value number. | All |
| ProdDate | Date production volume produced by Producing Party | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| HASHIDDENTEXT | Y, N or empty | Y if a Word Document with hidden text |
| HASHIDDENSLIDES | Y, N or empty | Y if a PowerPoint Document with hidden slides |
| HASSPEAKERNOTES | Y, N or empty | Y if a PowerPoint Document with hidden slides (if field not reasonably available, permissible to identify existence of speaker notes using the "HASHIDDENTEXT" field) |
| HASHIDDENROWS | Y, N or empty | Y if a Excel Document with hidden rows |
| HASHIDDENCOLUMNS | Y, N or empty | Y if a Excel Document with hidden columns |
| HASHIDDENWORKSHEETS | Y, N or empty | Y if a Excel Document with hidden worksheets |
| HASREVISIONS | Y if a Word Document with revisions, otherwise N or empty | E-document |
| HASCOMMENTS | Y if a Word or Excel Document with comments, otherwise N or empty | E-document |
| The time zone used to process the Document | | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| NATIVEFILELINK | For Documents provided in Native Format only | All |