**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: FRAGRANCE END-USER PLAINTIFF ANTITRUST LITIGATION | No. 23-cv-16127<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court are End-User Plaintiffs' ("EUPs") Motion for Final Approval of Settlement with Defendant International Flavors & Fragrances, Inc. ("IFF"), Certification of Proposed Settlement Class, and Related Relief (the "Approval Motion"), ECF No. 216, and EUPs' Motion for Reimbursement of Litigation Expenses and Set Aside for Future Litigation Expenses (the "Expenses Motion," and collectively, the "Motions"), ECF No 217. The Motions are unopposed, and the Court decides them without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated herein, the Motions are **GRANTED**.

## I. BACKGROUND[1]

### a. Facts and Procedural History

In late 2023, EUPs[2] filed a putative class action lawsuit[3] against IFF, along with non-settling defendants DSM-Firmenich AG, Firmenich International SA,[4] Firmenich Inc., Agilex Flavors & Fragrances, Inc., Givaudan SA, Givaudan Fragrances Corporation, Ungerer & Company, Inc., Custom Essence LLC, Symrise AG, Symrise Inc., and Symrise US LLC (the "Non-Settling Defendants"). ECF No. 1. EUPs later amended their complaint in February 2024 (the "Amended Complaint" or "AC"). ECF No. 38. The AC alleges a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 *et seq.*; violations of various state law antitrust and consumer protection statutes; and a common law claim of unjust enrichment. *See generally* AC. Shortly thereafter, Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 78, and three of the Defendant Businesses' foreign parent companies moved for dismissal under Rule 12(b)(2).

---

[1] All capitalized terms not defined herein have the same meaning as defined in the Settlement Agreement, ECF No. 216-3.

[2] For a list of EUPs, *see* Approval Motion 1 n.1.

[3] This action is the third consolidated proceeding alleging substantially similar violations against Defendants. *See In re Fragrance Direct Purchaser Antitrust Litig.*, No. 23-cv-2174; *In re Fragrance Indirect Purchaser Antitrust Litig.*, No. 23-cv-3249. In January 2026, Brian Fields filed an additional lawsuit against many of these same Defendants based on the same alleged conduct. *See Fields v. DSM Firmenich et al.*, No. 26-cv-852.

[4] DSM-Firmenich AG and Firmenich International SA have since been substituted in this matter with Firmenich SA. ECF No. 268.

ECF Nos. 65, 74, 76. The Court granted and denied in part Defendants' Rule 12(b)(6) motion, ECF No. 119. The Court also denied the Rule 12(b)(2) motions, but allowed Plaintiffs to take jurisdictional discovery and granted leave for Defendants to renew their motions. ECF No. 122.

**b. Settlement Negotiations and the Settlement Agreement**

EUPs and IFF represent that they have been engaged in settlement negotiations since early 2025. Justice Approval Decl. ¶ 17, ECF No. 216-2. Under the direction of Hon. Layn R. Phillips (Ret.), the parties executed a settlement agreement on March 16, 2026 (the "Settlement Agreement" or "Settlement"). *Id.* ¶¶ 18–22. The Settlement Agreement provides for a $11,000,000 payment to the EUP Settlement Class and requires IFF to provide "substantial cooperation in assisting Plaintiffs with prosecuting their action against the Non-Settling Defendants." *Id.* ¶¶ 29–31. The Settlement Agreement defines the EUP Settlement Class as follows:

> All Persons who, during the Class Period, purchased in the United States consumer products or household goods, not for resale, which contained Fragrance Products that were manufactured or sold by Defendants or their subsidiaries or affiliates, INCLUDING Plaintiffs, but specifically EXCLUDING: purchasers that purchased Fragrance Products directly from Defendants, purchasers that purchased Fragrance Products manufactured by Defendants other than directly from Defendants for incorporation in finished consumer products or household goods, Defendants, IFF Released Parties, conspirators, the officers, directors, or employees of any Defendant or conspirator, any entity in which any Defendant or conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator, and any Person acting on their behalf. Also excluded from the Class are any judicial officer presiding over the Consolidated Action and the members of his/her immediate family and judicial staff, and any juror assigned to the Consolidated Action, as well as any Person who or which submits a valid and timely request for exclusion in accordance with the requirements set forth in the Class Notice and whose request is accepted by the Court. For the avoidance of doubt, the Settlement Class includes Persons who purchased in the United States consumer products or household goods that contained Fragrance Products manufactured or sold by Defendants or their subsidiaries or affiliates (i) from a seller located outside the United States, or (ii) from a seller in the United States that acquired Fragrance Products manufactured or sold by Defendants outside the United States from that seller's foreign affiliate, or from Defendants or their subsidiaries or affiliates.

Approval Motion 5–6, (citing Settlement Agreement ¶ 1, ECF No. 126-3). The Settlement Agreement also set a Class Period from January 1, 2018, to December 31, 2023. Settlement Agreement 4.

EUPs filed their Motion for Preliminary Approval of Settlement, ECF No. 200, which the Court granted (the "Preliminary Approval Order"). ECF No. 207. The Preliminary Approval Order also provisionally certified the class for settlement purposes only and approved the Notice Plan. *Id.*

**c. The Notice Plan**

Claims Administrator Epiq commenced dissemination of the Notice Plan on May 28, 2026. Approval Motion 3; Azari Decl. ¶ 7, ECF No. 216-5. The Notice Plan included targeted digital advertising, a publication notice in *People* magazine, sponsored search listings, an informational release, a settlement website, and a toll-free telephone number *Id.* ¶¶ 10, 18–23. The deadline to request exclusion from the Settlement was July 27, 2026, and the deadline to object to the Settlement was August 17, 2026. *Id.* ¶ 25. A hearing on the final approval of the Settlement (the "Fairness Hearing") was held on September 15, 2026. As of the date of the fairness hearing, there were no objections to the Settlement and no requests for exclusion.

## II. DISCUSSION

The Motions ask the Court to: (1) grant final approval of the Settlement Agreement; (2) finally certify the EUP Settlement Class; and (3) approve reimbursement of expenses already incurred by EUP counsel and Epiq and set aside a portion of the Settlement Fund to cover future costs. The Court considers each item in turn.

**a. Settlement Approval**

**1. Adequacy of Notice**

Before approving the Settlement Agreement, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires notice of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The notice must also comport with the constitutional requirements of due process. *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 167 (E.D. Pa. 2011).

The Notice Plan passes scrutiny under both Rule 23 and due process considerations. The Notice Plan used a multimodal approach designed to reach consumers in a manner best practicable under the circumstances. *See* Azari Decl ¶¶ 7–24. (describing the Notice Plan's framework for dissemination); *supra* Section I.c. Its plain language clearly describes all information that Rule 23(c)(2) requires, *see, e.g.*, Azari Decl. Attach. 5, and "enable[s] class members to make informed decisions on whether they should take steps to

protect their rights." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (citation modified).

### 2. Rule 23(e)(2) and *Girsh* Factors

Rule 23 dictates that courts may only approve a proposed class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts must consider: (A) the adequacy of the class representatives and counsel's representation of the class; (B) whether the settlement was negotiated at arm's length; (C) the adequacy of the relief provided for the class, emphasizing the impact of any possible trial and appeal, the "effectiveness of the proposed method of distributing relief to the class," the terms of any attorneys' fees award sought, and the existence of other related agreements;[5] and (D) the equities surrounding how class members are treated relative to each other. *Id.* The requirements of Rule 23(e)(2) overlap significantly with the Third Circuit's *Girsh* factors. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). The nine *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* (citation modified).

The Settlement Agreement meets Rule 23(e)(2)'s requirements for approval. First, counsel's "actual performance" prosecuting this complex antitrust matter has been adequate. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes; Justice Approval Decl. ¶¶ 7–16. The class representatives have also adequately fulfilled their duties on behalf of the Settlement Class. Justice Approval Decl. ¶¶ 42–43. Second, the Settlement Agreement is the product of arm's length negotiations conducted under the oversight of non-party mediator Hon. Layn R. Phillips (Ret.). *Id.* ¶¶ 34–41. Third, the relief provided to the class is adequate relative to the inherent complexities in continuing to prosecute this antitrust class action, as well as the likely duration of this proceeding. *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) ("An antitrust class action is arguably the

---

[5] EUPs have indicated that they are not presently seeking an award of attorneys' fees. Approval Motion 33 n.5. Nor are there any supplemental agreements that require disclosure under Rule 23(e)(3). *Id.* at 33. Accordingly, the Court's analysis excludes these factors, as well as other factors not relevant to its inquiry, such as the ability of Defendants to withstand a greater judgment. *See id.* at 26 (arguing that the seventh *Girsh* factor is of "minimal relevance" to the Court's inquiry).

most complex action to prosecute") (citation modified).[6] The adequacy of the relief will be evaluated further through the *Girsh* framework. Finally, the Settlement Agreement treats class members equitably relative to each other, as the Settlement proceeds will be distributed to each class member on a *pro rata* basis "in proportion to the harm allegedly suffered." Approval Motion 31.

For these reasons, the Court finds that the Settlement satisfies Rule 23. It turns next to its analysis of the remaining applicable *Girsh* factors.

#### i. The Class's Reaction to the Settlement

This factor accounts for whether class members support the proposed settlement. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004). A limited number of objections is indicative of class support. *See Phila. Inquirer*, 2025 WL 1314089, at *9. Here, of the "millions of consumer and potential Settlement Class Members," there have been no requests for exclusion or objections to the Settlement. Approval Motion 22. This weighs in favor of approving the Settlement Agreement.

#### ii. The Stage of the Proceedings and the Amount of Discovery Completed

Next, courts measure "the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (citation modified). The fact that discovery is incomplete does not necessarily militate against settlement approval. *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-cv-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). Since this case's commencement in 2023, EUPs' claims have survived two motions to dismiss, and at least some discovery has been ongoing. Approval Motion 23. Thus, the Court finds that the parties, even without the benefit of full discovery, have an adequate appreciation of the merits of their positions. This factor also weighs in favor of approving the Settlement Agreement.

#### iii. The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors work in tandem to "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement." *Warfarin*, 391 F.3d at 537. In a complicated case such as this one, there are substantial risks in EUPs' proceeding with their claims, rather than opting for settlement. *See In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 743 (E.D. Pa. 2013). As a result, this factor points towards approving the Settlement Agreement.

---

[6] The criterion enumerated in Rule 23(e)(2)(C)(i) overlaps with the first *Girsh* factor, "the complexity, expense and likely duration of the litigation." *Braun v. Phila. Inquirer, LLC*, No. 22-cv-4185, 2025 WL 1314089, at *8 (E.D. Pa. May 6, 2025); *Girsh*, 521 F.2d at 157. This analysis, therefore, applies with equal force to *Girsh* factor one.

#### iv. The Risks of Maintaining Class Status through Trial

Rule 23(a) permits courts to "decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Cendant*, 264 F.3d at 239 (citation modified). As a result, the inherent risk of decertification often suggests approval may be appropriate. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998). The Court, following this reasoning, finds that this factor counsels in favor of approving the Settlement Agreement.

#### v. The Settlement Fund's Range of Reasonableness in light of the Best Possible Recovery and All Attendant Risks of Litigation

The final two *Girsh* factors probe for "reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin*, 391 F.3d at 538. Here, the Settlement Agreement provides for a substantial recovery for EUPs. It also covenants IFF to providing "significant cooperation" in EUPs' claims against the Non-Settling Defendants. Approval Motion 28. Additionally, class counsel has described this Settlement as an "ice breaker settlement," *id.* at 29, which creates momentum for more settlements to follow. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (recognizing the value of ice-breaker settlements). Additional settlements *have* followed. *See In re Fragrance Indirect Purchaser Plaintiff Antitrust Litig.*, No. 23-cv-3249, ECF No. 232 (D.N.J. May 21, 2026) (order in companion case granting preliminary approval of settlement with IFF); *In re Fragrance Direct Purchaser Antitrust Litig.*, No. 23-cv-2174, ECF No. 295 (D.N.J. July 2, 2026) (motion in companion case seeking preliminary approval of settlement with Firmenich). For these reasons, the Court concludes that the Settlement Agreement presents substantial value, both monetary and otherwise, for the class and falls within the range of reasonableness in light of the best possible recovery.[7]

To conclude, against the backdrop of Rule 23(e) and upon application of the *Girsh* factors, the Court finds the Settlement to be fair, reasonable, and adequate and **APPROVES** the same.[8]

### b. Final Class Certification

Settlement approval is just half the battle, however, as Rule 23(c) mandates that the proposed Settlement Class meets the requirements for class certification under Rules 23(a) and (b). *Cunningham v. DG3 N. Am., Inc.*, No. 24-cv-7385, 2025 WL 2919331, at *6 (D.N.J. Oct. 14, 2025). The party seeking class certification must prove each Rule 23 requirement by a preponderance of the evidence. *Neale v. Volvo Cars of N. Am., LLC*, 794

---

[7] The Court sees no reason to repeat the risks that come with prosecuting this complex action. *See supra* Section II.a.2. This factor also weighs in favor of approving the Settlement Agreement.

[8] EUPs submit that "[t]he proposed Plan of Distribution for the Settlement Fund is independent of the Settlement Agreement with IFF and will be submitted to the Court for approval . . . at a later date." Approval Motion 3. Because the Plan of Distribution is not presently before the the Court, it takes no position on its fairness and effectiveness at this time.

F.3d 353, 370 (3d Cir. 2015). These requirements are numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

**1. Rule 23(a) Factors**

**i. Numerosity**

The numerosity requirement is met where the size of the class renders joinder of all its members impracticable. Where, as here, there are millions of potential members of the Settlement Class, numerosity is easily satisfied. *See* Pls.' Motion for Provisional Class Certification 25 (citing *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).

**ii. Commonality**

There is commonality where "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596–97 (3d Cir. 2009) (citation modified). Such is the case here, as the dispute involves common issues related to Defendants' allegedly anticompetitive conduct and the resulting harm to the Class.

**iii. Typicality**

The typicality factor requires the "interests of the named plaintiffs [to] align with the interests of the absent members." *Stewart*, 275 F.3d at 227 (citation modified). Here, the named plaintiffs assert the same legal theories and claims as the rest of the Settlement Class. This is sufficient to demonstrate typicality. *Schering Plough*, 589 F.3d at 598.

**iv. Adequacy**

Finally, Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This is a two-part inquiry that evaluates counsel's ability to represent the class and checks for conflicts of interest between named plaintiffs and other class members. *Warfarin*, 391 F.3d at 532. The Court finds that Kimberly A. Justice of Justice Jagher London & Millen LLC and Kellie Lerner of Shinder Cantor Lerner LLP are qualified to represent the Settlement Class. It further finds that there is no conflict of interest between named Plaintiffs and the Class. The adequacy requirement, therefore, is satisfied.

**2. Rule 23(b)(3) Factors**

Rule 23(b) has two requirements: that common questions of law or fact predominate, and that a class action is the superior method for fairly and efficiently adjudicating the case. Fed. R. Civ. P. 23(b)(3).

**i. Predominance**

The predominance requirement asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Where all claims arise from the same course of alleged conduct, the predominance requirement is

satisfied. *In re AIG, Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). That is the case here: the claims of named Plaintiffs and the remaining EUPs both concern Defendants' allegedly anticompetitive conduct. The Court finds that this requirement is met as well.

**ii. Superiority**

Lastly, EUPs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. A class action is the superior method of managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (citation modified). Here, it is unrealistic to expect individual Settlement Class Members to pursue individual actions for their personal damages, and the efficiency of such efforts is doubtful at best. Accordingly, the Court finds that a class action is the superior method of adjudicating this matter.

Finding that EUPs have met the requirements for final class certification set forth in Rules 23(a) and (b), the Court hereby **CERTIFIES** the EUP Settlement Class.

**c. Approval of Expenses**

The Expenses Motion seeks approval for reimbursement of the following expenses: (1) $165,878.65 in litigation costs incurred by Counsel; (2) approval of $299,308.74 in costs incurred by Epiq; (3) a holdback of $34,000 for Epiq's anticipated expenses; and (4) a set aside for $1 million in future litigation costs. Expenses Motion.

Rule 23(h) permits courts to award expenses "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The decision to award expenses is within the Court's discretion. *Cunningham*, 2025 WL 2919331, at *8. Still, this Court must carefully review any application for expenses, even if it is unopposed, because of the danger that "lawyers might urge a class action settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 146 (D.N.J. 2004).

**1. Expenses Already Incurred**

Class counsel seeks an award of $165,878.65 as reimbursement for expenses incurred in prosecuting this action through March 31, 2026. Expenses Motion 8. Counsel for EUPs have averred that they advanced this amount "for the benefit of the Settlement Class without any guarantee of payment." *Id.* at 9 (citing Justice Expenses Decl. ¶ 22, ECF No. 217-2). These expenses include research, travel, filing fees, litigation fund contributions, and other administrative costs. Expenses Motion Exs. A–H, ECF Nos. 217-3–217-10. Epiq has represented that, through May 2026, it has spent $299,308.74 to implement the Notice Plan. Azari Decl. ¶ 26. The Court finds both amounts to be reasonable in light of the nature of this proceeding and **APPROVES** reimbursement of these expenses.

### 2. Anticipated Expenses

Lastly, EUPs' Counsel seeks $1 million of the Settlement Fund to be set aside from the Settlement for the purpose of paying future expenses that Counsel may incur in prosecuting this action against the Non-Settling Defendants. Expenses Motion 10. Epiq requests a $34,000 holdback for future administrative fees. Azari Decl. ¶ 26. Courts in this Circuit award payment for future expenses. *See In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 336 (E.D. Pa. 2007). The Court finds these expenses to be reasonable, noting that there have not been any objections to any aspect of the award counsel seeks. The Court therefore **APPROVES** the set aside and holdback.

## III. CONCLUSION

For the foregoing reasons, the Motions are **GRANTED**. An appropriate order follows.

Date: September 16 2026

**WILLIAM J. MARTINI, U.S.D.J.**